UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Innovative Medical Systems, Inc.,
a Missouri corporation, et. al.

      Plaintiffs,

v.                                          MEMORANDUM OPINION
                                                 AND ORDER
                                                Civil No. 04-4705 (MJD/JGL)

Augustine Medical, Inc. and
Arizant, Inc.,

      Defendants.

_____

      Larry A. Bagsby, Bagsby & Lee, L.L.C. for and on behalf of Plaintiffs.

      B. Todd Jones, Stephen P. Safranski and David J. Wallace-Jackson, Robins, Kaplan, Miller & Ciresi, L.L.P. for and on behalf of Defendants.

_____

      This matter is before the Court upon Defendants' motion for judgment on the pleadings. In partial response to Defendants' motion, Plaintiffs have filed a motion to serve and file a First Amended Complaint.

<u>Background</u>

      Plaintiffs allege that they are in the business of retail marketing and distribution of medical devices. Defendant Augustine Medical, Inc. ("AMI") is in the business of wholesale manufacture of medical devices. Defendant Arizant, Inc. is the holding and parent company of AMI as of January 24, 2003 and is the

1

successor corporation of AMI in all respects. In the original Complaint, Plaintiffs asserted claims against AMI and Arizant pursuant to the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1962(c) and (d).

In the First Amended Complaint, Plaintiffs seek to add the following Defendants:  Scott D. Augustine, individually and as CEO of AMI; James Benham, individually and as General Counsel of AMI; Paul Johnson, individually and as Director of Reimbursement of AMI, Tim Hensley, individually and as National Sales Manager of AMI, Phillip Zarlengo, CEO of Health Finance and Marketing, Inc. and Health Finance and Marketing, Inc. a/k/a PCZ Marketing and Finance Corp. d/b/a Strategic Reimbursement.  In addition to the RICO claims asserted in the original Complaint, Plaintiffs seek to add claims for violation of the Minnesota Unlawful Trade Practices Act; violation of the Minnesota Consumer Fraud Act, Fraud and Conspiracy to Commit Fraud; and Negligent Misrepresentation.

For purposes of addressing the Defendant's Motion for Judgment on the Pleadings and Plaintiffs' Motion to Amend the Complaint, the Court will refer to the allegations in the First Amended Complaint, filed in conjunction with Plaintiffs' motion.

1. Factual Allegations contained in the First Amended Complaint

Plaintiffs allege that AMI invented a medical device known as the "Warm-Up"; a device intended to treat deep wound injuries.  First Amended Complaint ¶

18.  AMI initially sought advice as to whether the Warm-Up was reimbursable under Medicare/Medicaid, and at least five individuals informed AMI that the device would not be reimbursable.  <u>Id.</u> ¶ 19.  AMI thereafter approached Defendant Zarlengo and Strategic Reimbursement.  <u>Id.</u> ¶ 20.  Zarlengo allegedly told AMI, Benham, Johnson and Hensley that he could sell the Warm-Up with Medicare/Medicaid reimbursement, but only if they concealed the true nature of the product.  <u>Id.</u>  Defendants allegedly agreed to such concealment.  <u>Id.</u> ¶ 21.

Defendants then approached the Plaintiffs and offered exclusive distribution/marketing contracts.  To entice Plaintiffs into this business relationship, Defendants told them the device would be reimbursable under Medicare/Medicaid.  <u>Id.</u> ¶ 22.  Between 1997 and 2001, Plaintiffs purchased the exclusive marketing/distribution rights for $100,000.  <u>Id.</u> ¶ 23.  Plaintiffs thereafter sold the device, telling the consumers that the cost of the device was reimbursable under Medicare/Medicaid.  <u>Id.</u> ¶ 24.

Between 1997 and 2001, Defendants submitted invoices to Plaintiffs for the device, as well as advertising and promotional materials via the U.S. Mail and through the wires of computer based software.  <u>Id.</u> ¶ 26.  In May 2001, the FBI raided Plaintiffs' offices simultaneously, seizing all documents related to the Warm-Up device.  <u>Id.</u> ¶ 27.

In 2003, the Defendants were indicted in the United States District Court,

Southern District of Illinois for the offenses of conspiracy to defraud the United States, healthcare fraud, mail fraud, and forfeiture. Id. ¶ 28. Subsequently, AMI entered into a plea agreement, pleading guilty to the offense of conspiracy to defraud the United States. In the Stipulation of Facts section of the Plea Agreement, AMI admitted that it, Zarlengo, Augustine, Benham, Johnson and Hensley knew the Warm-Up was not reimbursable and that each had taken actions to conceal that fact from Plaintiffs, consumers and to Medicare/Medicaid agencies. Id. ¶ 30.

The individual defendants also entered into plea agreements. The fraud committed by these Defendants totals $3,749,940.13, and the government now seeks restitution for those payments from the individuals and entities that submitted claims to Medicare/Medicaid. Id. ¶ 33.

Plaintiffs allege that as a result of Defendants' acts and omissions, Plaintiffs have incurred damages, including: the costs of their investments in purchasing the exclusive marketing/distribution agreements; costs of purchasing a now unmarketable "Warm-Up" product; loss of profits; damages to the good-will of their businesses; and diminution of their business in their respective markets. Id. ¶ 36.

Standard for Judgment on the Pleadings

A motion for judgment on the pleadings should be granted only if the moving party clearly establishes that there are no material issues of fact and that it is entitled to judgment as a matter of law.  Porous Media Corporation v. Pall Corporation, 186 F.3d 1077, 1079 (8th Cir. 1999).  In ruling on such a motion, the Court should generally ignore materials outside of the pleadings, but it may consider materials that are part of the public record or do not contradict the complaint, as well as materials that are necessarily embraced by the complaint. Id.

    I. RICO

    A.  Standing

Section 1962(c) of RICO prohibits participation in the conduct of an enterprise engaged in interstate commerce through a pattern of racketeering activity.  "Racketeering activity", sometimes referred to as predicate acts, are defined by reference to specific unlawful acts, most of which are crimes. Section 1961(a).  A pattern of racketeering activity requires at least two acts of racketeering activity within ten years.  Section 1961(5).

RICO further provides for a private cause of action for "[a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter . . ." Section 1964(c).  The Supreme Court has held that to have standing to assert

a RICO claim, the plaintiff must have suffered injury to its business or property that was proximately caused by the RICO violation.  Holmes v. Securities Investor Protection Corp., 503 U.S. 258, 267-74 (1992).  In so finding, "the Court rejected "but for" causation, and instead construed RICO to require proximate cause, that is, 'some direct relation between the injury asserted and the injurious conduct alleged.'" Hamm v. Rhone-Poulenc Rorer Pharm., Inc., 187 F.3d 941, 951 (8th Cir. 1999)(quoting, Holmes, supra).

Defendants argue that the RICO claims must be dismissed, as alleged in both the Complaint and the First Amended Complaint, as Plaintiffs lack standing to assert such claims because they were not the targets of the alleged scheme to defraud. Rather, the target of the scheme was the Medicare/Medicaid programs, while Plaintiffs actually benefitted from the scheme.  The injury to Plaintiffs' business did not come about until the government exposed the scheme, and the sales of the Warm-Up stopped.

Plaintiffs respond that part of the scheme required the Defendants to make misrepresentations to Plaintiffs in order to induce them into purchasing exclusive marketing/distribution contracts.  Thereafter, the scheme involved Plaintiffs repeating such misrepresentations to consumers in order to induce sales of the Warm-Up.  Thus, Plaintiffs argue they were in fact targets of the scheme because they expended in excess of $100,000 when they purchased the

marketing/distribution contracts and product in reliance on the Defendants' misrepresentations, and are now left with an unmarketable product.

In <u>Hamm</u>, the plaintiffs were employees of a pharmaceutical company that alleged the company engaged in a fraudulent scheme to market four pharmaceutical products by promoting off-label uses.  The Eighth Circuit determined that such a scheme was not directed at plaintiffs, but rather at hospitals, physicians and other medical personnel.  As plaintiffs were not the "targets" of the scheme, the court held they did not have standing to assert RICO claims against their employer.   <u>Id.</u> at 952.

In a case involving Medicare/Medicaid fraud, a company sued its former president and others for various fraudulent acts, breaches of fiduciary duty and self-dealing.  <u>Northwestern Human Services, Inc. v. Panaccio</u>, 2004 WL 2166293 (E.D. Pa. 2004). The plaintiffs had alleged that defendants caused them to make repeated misrepresentations to state and federal agencies in order to qualify for increased Medicare/Medicaid payments.  The court found that the plaintiffs did not have standing to assert RICO claims because the "actual, immediate and direct result of the Medicare/Medicaid fraud was the collection of excessive reimbursements.  Thus, there is a direct relationship between [defendant's] conduct and a benefit to [plaintiff], not injury." <u>Id.</u> at *4.  The court further found that the direct target of the scheme was Medicare/Medicaid, and that the

losses incurred by the plaintiffs, legal fees and civil penalties, were actually caused by the exposure of the Medicare/Medicaid fraud, not the scheme itself.  Id. at *7.

Similarly, in American Express Co. Shareholder Litig., 39 F.3d 395, 400 (2nd Cir. 1994) the Second Circuit held that the alleged RICO injury must have been the "preconceived purpose" or the "specifically intended consequence" of the RICO activities.  It is not enough that the injury occurred only because the scheme was exposed. Id.  See also, BCCI Holdings v. Pharaon, 43 F. Supp.2d 359, 365 (S.D.N.Y. 1999)(RICO standing not established when injury occurred as a result of the exposure of the scheme).

In this case, it is clear that Plaintiffs suffered no economic injury until after the scheme was exposed.  Accordingly, the Court finds Plaintiffs lack standing to assert claims under RICO.

B.  Enterprise

Dismissal of the RICO claims is also appropriate as Plaintiffs have failed to allege that Defendants controlled or directed an "enterprise."

RICO provides that it is unlawful for a person to conduct the affairs of an enterprise through a pattern of racketeering activity, and that the defendant be distinct from the enterprise.  United HealthCare Corp. v. American Trade Ins. Co., 88 F.3d 563, 570 (8th Cir. 1996).  In addition, the "conduct" requirement has been interpreted to authorize recovery only against individuals who "participate in the

operation or management of the enterprise itself." Handeen v. Lemaire, 112 F.3d 1339, 1347 (8th Cir. 1997).

Plaintiffs argue that in the First Amended Complaint, the enterprise is alleged to be Defendants AMI, Augustine, Benham, Johnson and Hensley and Defendant Zarlengo and his corporation Strategic Reimbursement; separate individuals and entities that became associated to carry out the Medicare/Medicaid fraud scheme at issue. However, there is no allegation that the AMI defendants participated in the operation or management of Strategic Reimbursement. Rather, the First Amended Complaint only describes a situation in which AMI, Augustine, Benham, Johnson and Hensley "agreed with the plan of Defendant Zarlengo to sell and conceal the true nature of the 'Warm-Up' product." Comp. ¶ 20.

C.  Conspiracy

Section 1962(d) prohibits participation in a conspiracy to commit violation of sections 1962(a) through (c). As Plaintiffs have failed to plead a violation of section 1962(c), the conspiracy claim fails as well. See eg., Jackson v. BellSouth Telecommunications, 372 F.3d 1250, 1269 (11th Cir. 2004)(to properly plead a RICO conspiracy claim, a plaintiff must allege an illegal agreement to violate a substantive provision of the RICO statute).

II.  State law claims

The remaining claims included in the First Amended Complaint are all state law claims. Whether the Complaint should be amended to included these claims depends on whether it would be futile to do so. Leave should not be granted if the new claims cannot withstand a motion to dismiss. Holloway v. Dobbs, 715 F.2d 390, 392 (8th Cir. 1983).

    A.  Count II - Deceptive Trade Practices Act/False Advertising
        Count III - Consumer Fraud Act

Defendants argue that Plaintiffs' claim under the Deceptive Trade Practices Act, Minn. Stat. § 325D.43-48, must be dismissed as Plaintiffs seek damages and the relevant statute provides only for injunctive relief. Simmons v. Modern Aero, Inc., 603 N.W.2d 336, 338 (Minn. Ct. App. 1999). Plaintiffs concede that a claim under Minn. Stat. § 325D.43-48 is limited to injunctive relief, but argue that they have also asserted a claim under the False Statement in Advertising Act, Minn. Stat. § 325F.67, and that a claim for damages is appropriate under such statute. While it is true that an action for damages may be maintained under Minn. Stat. § 325F.67 and § 8.31, subd. 3a, the Court finds that Counts II and III fail to state a claim given the fact that Plaintiffs are merchants.

In Marvin Lumber and Cedar Company v. PPG Industries, Inc., 223 F.3d 873, 887-888 (8th Cir. 2000), the Eighth Circuit Court of Appeals affirmed a district court dismissal of a window manufacturer's claims brought under Minn. Stat. §§ 325D13, 325F.67 and 325F.69. The court recognized that the Minnesota Supreme

Court had expressly found that claims under Minn. Stat. § 325F.69 do not apply to merchants. Id. at 887 (citing, Church of the Nativity v. Watpro, 491 N.W.2d 1, 7 (Minn. 1992)). The court then predicted that the Minnesota Supreme Court would similarly find that claims under Minn. Stat. § 325D.13 and 325F.67 do not apply to merchants, based in part on the decision in Watpro, supra and on its finding that the statute was primarily designed to protect consumers, not sophisticated merchants. Id. at 888 (citing State by Humphrey v. Philip Morris, Inc., 551 N.W.2d 490, 496 (Minn. 1996)).

Plaintiffs do not dispute that claims brought under Minnesota's consumer protections statutes are not available to merchants, but argue that their status as retail distributors does not convert them into merchants in this case because they did not have specialized knowledge of how the Warm-Up product was approved by Medicare/Medicaid.

The Minnesota Supreme Court has interpreted "consumer transactions" broadly in order to enhance consumer protection. Ly v. Nystrom, 615 N.W.2d 302, 308 (Minn. 2000) (citing State v. Philip Morris, Inc., 551 N.W.2d 490, 496 (Minn. 1996)). And because the consumer protection statutes are remedial, the statutes have been liberally construed in favor of protecting consumers. Id. With these precepts in mind, the Minnesota Supreme Court determined that while the Consumer Fraud Act ("CFA") did not define "consumer", "the legislative history

clearly indicates that the CFA was intended to protect a broad, though not limitless, range of individuals from fraudulent and deceptive trade practices, and our decisions have recognized the breadth of its coverage." Id. at 310.  The court then held that because the unlawful practices it issue occurred while the parties were engaged in a one-on-one purchase of a business for operation and not for resale, the claim fell under the CFA.  Id.

In this case, however, the Plaintiffs are not individual purchasers involved in a single transaction.  Rather, they are retail distributors that engage in the business of retail marketing and distribution of medical devices, who were involved in a business relationship with Defendants from 1997 through 2001.  First Amended Complaint ¶¶ 3-9 and 23-26.  Based on these allegations, Plaintiffs are clearly merchants and thus not entitled to the protections of the consumer protection statutes, Minn. Stat. §§ 325F.67 and 325F.68-325F.70.  See also, Gas Aggregation Servs. v. Howard Avista Energy LLC, 319 F.3d 1060, 1069 (8th cir. 2003) (recognizing that Minnesota law precludes cause of action under the Consumer Fraud Act by a commercial trader).

B. Count IV - Fraud and Conspiracy to Commit Fraud

Defendants argue that this claim is without merit because it is based on a misrepresentation of law.  The Court disagrees.  Plaintiffs allege that Defendants were informed by five individuals with marketing expertise that the Warm-Up

12

would not be reimbursable through Medicare/Medicaid.  They further allege that with this knowledge, Defendants nonetheless created and participated in a scheme to withhold this information in order to induce sales of the Warm-Up.  These allegations do not constitute a misrepresentation of law, as recognized by the Minnesota courts in Northernaire Productions, Inc. v. Crow Wing County, 244 N.W.2d 279, 281 (Minn. 1976) (alleged misrepresentation involved interpretation of zoning ordinance) and Gatz v. Frank M. Langefeld & Sons Const., Inc., 356 N.W.2d 716, 717 (Minn. Ct. App. 1984) (alleged misrepresentation involved prediction of enforcement of ordinance).  Rather, the allegations in the First Amended Complaint constitute misrepresentations of fact, rather than an opinion or a prediction.  See, Johnson v. St. Paul Ins. Co., 305 N.W.2d 571, 575 (Minn. 1981).

Nonetheless, the Court finds that the allegations of fraud have not been plead with particularity.  Under Rule 9(b) of the Federal Rules of Civil Procedure, "[i]n all averments of fraud . . . the circumstances constituting fraud . . . shall be stated with particularity."  The circumstances to be plead with particularity "include the time, place and contents of the alleged fraud; the identity of the person allegedly committing fraud; and what was given up or obtained by the alleged fraud."  Roberts v. Francis, M.D., 128 F.3d 647, 651 (8th Cir. 1997).

In this case, Plaintiffs have generally plead the fraudulent scheme, but have

13

failed to include any specifics as to which Defendant made what misrepresentations, the content of the misrepresentations and to whom such misrepresentations were made. Plaintiffs argue that they could not obtain such information because of the criminal proceedings involving the same scheme. As the alleged misrepresentations were made to Plaintiffs, however, it stands to reason that Plaintiffs would be able to provide the specifics noted above.

    C.  Count V - Negligent Misrepresentation

The elements of the tort of negligent misrepresentation are: (1) a duty of reasonable care in conveying information; (2) breach of that duty by negligently giving false information; (3) reasonable reliance on the misrepresentations, which reliance is the proximate cause of physical injury; and (4) damages. Flynn v. American Home Products Corp., 627 N.W.2d 342, 350-351 (Minn. Ct. App. 2001)(citing Smith v. Brutger Cos., 569 N.W.2d 408, 413 (Minn.1997)). "Under Minnesota law, no duty of care exists between sophisticated equals negotiating a business transaction unless the parties have a special relationship". Children's Broad. Co. v. Walt Disney Co., 245 F.3d 1008, 1019 (8th Cir. 2001). See, also, Kellogg Square Partnership v. Prudential Insurance Company of America, 63 F.3d 699, 703 (8th Cir. 1995)(citing Safeco Ins. Co. v. Dain Bosworth Inc., 531 N.W.2d 867, 872 (Minn. Ct. App. 1995)(Minnesota law provides that a negligent misrepresentation claim will not lie between parties to a commercial transaction

negotiating at arms length).

Defendants argue that this claim is without merit as Defendants did not owe a duty of care to Plaintiffs. The Court agrees. Plaintiffs and Defendants entered into a business transaction for the marketing and distribution of the Warm-Up. There is no allegation that somehow the parties were involved in a "special relationship" different than any other business relationship.

As all claims included in the First Amended Complaint would be subject to dismissal, it would be futile to allow the requested amendment. Accordingly,

IT IS HEREBY ORDERED that Plaintiffs' Motion for Leave to File and Serve the First Amended Complaint [Doc. No. 51] is DENIED. Defendant's Motion for Judgment on the Pleadings [Doc. No. 26] is GRANTED.

LET JUDGMENT BE ENTERED ACCORDINGLY

Date: May 31. 2005

s/ Michael J. Davis
Michael J. Davis
United States District Court