UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Innovative Medical Systems, Inc.,
a Missouri corporation, et. al.

       Plaintiffs,

v.

                          MEMORANDUM OPINION
                             AND ORDER
                         Civil No. 04-4705 (MJD/JGL)

Augustine Medical, Inc. and
Arizant, Inc.,

       Defendants.
_____

       Larry A. Bagsby, Bagsby & Lee, L.L.C. for and on behalf of Plaintiffs.

       B. Todd Jones, Stephen P. Safranski and David J. Wallace-Jackson, Robins, Kaplan, Miller & Ciresi, L.L.P. for and on behalf of Defendants.
_____

## FACTUAL BACKGROUND

       Plaintiffs are generally in the business of retail marketing and distribution of medical devices.  Defendant Augustine Medical, Inc. ("AMI") is in the business of wholesale manufacture of medical devices.  Defendant Arizant, Inc. is the holding and parent company of AMI as of January 24, 2003 and is the successor corporation of AMI in all respects.

       In the original Complaint, Plaintiffs asserted claims against AMI and Arizant pursuant to the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § § 1962(c) and (d).  Plaintiffs also included claims for violation of the

Minnesota Unlawful Trade Practices Act; violation of the Minnesota Consumer Fraud Act, Fraud and Conspiracy to Commit Fraud; and Negligent Misrepresentation in their Amended Complaint.

AMI is alleged to have invented a medical device known as the "Warm-Up"; a device intended to treat deep wound injuries.  Amended Complaint ¶ 18.  AMI initially sought advice as to whether the Warm-Up was reimbursable under Medicare/Medicaid, and at least five individuals informed AMI that the device would not be reimbursable.  Id. ¶ 19.  AMI thereafter approached Defendant Zarlengo and Strategic Reimbursement.  Id. ¶ 20.  Zarlengo allegedly told AMI, Benham, Johnson and Hensley that he could sell the Warm-Up with Medicare/Medicaid reimbursement, but only if they concealed the true nature of the product.  Id.  Defendants allegedly agreed to such concealment.  Id. ¶ 21.

Defendants then approached the Plaintiffs and offered exclusive distribution/marketing contracts.  To entice Plaintiffs into this business relationship, Defendants told them the device would be reimbursable under Medicare/Medicaid.  Id. ¶ 22.  Between 1997 and 2001, Plaintiffs purchased the exclusive marketing/distribution rights by paying $100,000.  Id. ¶ 23.  Plaintiffs thereafter sold the device, telling the consumers that the cost of the device was reimbursable under Medicare/Medicaid.  Id. ¶ 24.

Between 1997 and 2001, Defendants submitted invoices to Plaintiffs for the

device, as well as advertising promotional materials via the U.S. Mail and through the wires of computer based software.  <u>Id.</u> ¶ 27.  In May 2001, the FBI raided Plaintiffs' offices simultaneously, seizing all documents related to the Warm-Up device.  <u>Id.</u>

In 2003, the Defendants were indicted in the United States District Court, Southern District of Illinois for the offenses of conspiracy to defraud the U.S., healthcare fraud, mail fraud, and forfeiture.  <u>Id.</u> ¶ 28.  Subsequently, AMI entered into a plea agreement, pleading guilty to the offense of conspiracy to defraud the United States.  In the Stipulation of Facts section of the Plea Agreement, AMI admitted that it, Zarlengo, Augustine, Benham, Johnson and Hensley knew the Warm-Up was not reimbursable and that each had taken actions to conceal that fact from Plaintiffs, consumers and to Medicare/Medicaid agencies.  <u>Id.</u> ¶ 30.

The individual defendants also entered into plea agreements.  The fraud committed by these Defendants totals $3,749,940.13, and the government now seeks restitution for those payments from the individuals and entities that submitted claims to Medicare/Medicaid.  <u>Id.</u> ¶ 33.

**PROCEDURAL HISTORY**

Defendants moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.   In partial response to the Defendants' motion, Plaintiffs moved to amend their complaint.  This Court, by Memorandum

Opinion and Order dated May 31, 2005, denied Plaintiffs' motion to amend the complaint and granted Defendants' motion for judgment on the pleadings, and entered final judgment on June 1, 2005.

In the Memorandum Opinion and Order, the Court determined the state law fraud and conspiracy to commit fraud claims were not plead with particularity in the proposed amended complaint.  Plaintiffs had argued that they could not provide any more specifics, because of the criminal proceedings involving the same scheme.  The Court's response to this argument was "as the alleged misrepresentations were made to Plaintiffs, however, it stands to reason that Plaintiffs would be able to provide the specifics . . ."  Memorandum Opinion and Order, p. 14.

Plaintiffs did not appeal the judgment of June 1, 2005.  Instead, Plaintiffs filed a motion to vacate the judgment and to amend the complaint in order to replead their fraud claims.  Magistrate Judge Lebedoff issued a Report and Recommendation, recommending that the motion be granted and that Plaintiffs be allowed to replead their fraud claims.  The basis for the Magistrate Judge's ruling was his interpretation that this Court's Order of dismissal was without prejudice, given the language in the Order that Plaintiffs failed to meet the particularity requirements of Fed. R. Civ. P. 9(b).

This Court did not adopt the recommendation that the Court vacate its prior Order and allow Plaintiffs to amend their complaint, because the motion before the Court was one for relief from judgment pursuant to Fed. R. Civ. P. 60. To obtain the requested relief under Rule 60, Plaintiffs had to demonstrate exceptional circumstances.  The Court found that Plaintiffs did not meet this burden.  On appeal, the Eighth Circuit affirmed this Court's denial of Plaintiffs' motion to vacate the judgment.  Innovative Medical Systems, Inc. v. Augustine Medical et al., Civ. No. 05-4261, 2006 WL 2819935 (8th Cir. 2006).

In January 2007, Plaintiffs filed a new lawsuit against Defendants.  In that case, Plaintiffs asserted the same claims of fraud and conspiracy to commit fraud that were included in this litigation.  See, Innovative Medical et al. v. Augustine Medical et al., Civil No. 07-659 (PJS).  The complaint was later amended to drop Innovative Medical Systems, Genesis Medical, S.C. Medical and Associated Provider Services as party plaintiffs from the second lawsuit.  By Order dated August 31, 2007, the case was dismissed.

In May 2007, Plaintiffs Innovative Medical Systems, Genesis Medical, and S.C. Medical filed an arbitration demand with the American Arbitration Association, again based on the same claims of fraud and conspiracy to commit fraud.

## I.  Motion for Injunctive Relief

### A.  All Writs Act

Pursuant to the All Writs Act, 28 U.S.C.  § 1651, Defendants request the Court to issue an Order enjoining Plaintiffs from relitigating any claims that have been resolved in this case.

The All Writs Act empowers this Court to protect the res judicata and collateral estoppel effects of its prior judgments by enabling it to issue all writs necessary or appropriate in aid of their jurisdiction.  Canady v. Allstate Ins. Co., 282 F.3d 1005, 1018 (8th Cir. 2002).  This power allows the Court to issue an order enjoining relitigation of its judgment, even if the case in which the judgment issued is closed or on appeal.  Id.  The Court's power to enjoin relitigation extends to relitigation in state courts and in other forums, including arbitration.  In Re Y & A Group Secs. Litig., 38 F.3d 380, 382 (8th Cir. 1994); Entergy, Ark., Inc. v. Nebraska, 210 F.3d 887 (8th Cir. 2000); Time Warner Cable, Inc. v. City of Minneapolis, No. 06-484, 2006 WL 1579941, at *5 (D. Minn. June 2, 2006) (Davis, J.).

The Court must examine three criteria to determine whether res judicata applies: 1) whether the prior judgment was rendered by a court of competent jurisdiction; 2) whether the prior judgment was a final judgment on the merits; and 3) whether the same cause of action and the same parties or their privies

were involved in both cases.  <u>Banks v. Int'l Union Electron</u>, 390 F.3d 1049, 1052 (8th Cir. 2004).  Defendants argue these criteria are clearly met in this case.

There is no dispute that the first and third elements are met in this case. The only question to be determined is whether the prior judgment was "a final judgment on the merits."  Defendants assert that the Order dismissing this case issued as a result of its motion for judgment on the pleadings, pursuant to Fed. R. Civ. P. 12(c), and a dismissal pursuant to this rule is a final judgment on the merits.  Plaintiffs' argue that the Court dismissed the fraud claim pursuant to Fed. R. Civ. P. 9(b), and that such dismissals are without prejudice.

In support of their position, Plaintiffs rely on the United States Supreme Court decision in <u>Semtek International Incorporated v. Lockheed Martin Corporation</u>, 531 U.S. 497 (2001).  In that decision, the Court held that a dismissal order issued pursuant to Fed. R. Civ. P. 41(b), which provides that such dismissal is "an adjudication on the merits", does not necessarily have res judicata effect.  <u>Id</u>. at 503-04.  At issue in <u>Semtek</u>, was whether it was proper for a Maryland state court to give preclusive effect to a dismissal order issued by the United States District Court for the Central District of California.  The <u>Semtek</u> Court noted that the California case had been dismissed on the grounds that the action was barred by the applicable California statute of limitations.   The Court then determined it was error to give preclusive effect to that order, in the

7

Maryland action, as the two actions were based on different state laws.

In this case, this Court dismissed Plaintiffs' Complaint in response to Defendants' motion for judgment on the pleadings and Plaintiffs' motion to amend their complaint.  The Court also notes that Plaintiffs' filed the motion to amend, in part, to address the inadequacies of their Complaint pointed out by Defendants in their brief.  See Docket No. 49, ps. 1-2.  In ruling on the Defendants' motion, this Court took into consideration the allegations in the amended complaint.  This Court nonetheless found the allegations lacking and granted the Defendants' motion for judgment on the pleadings.

A dismissal predicated on Rule 9(b) of the Federal Rules of Civil Procedure may have preclusive effect.  See Caballero-Rivera v. Chase Manhattan Bank, N.A., 276 F.3d 85, 86-87 (1st Cir. 2002) cert. denied, 536 U.S. 905 (2002) (dismissal of fraud claim for failure to comply with Fed. R. Civ. P. 9(b) entitled to res judicata effect); Murr Plumbing, Inc. v. Scherer Brothers Financial Services, 48 F.3d 1066, 1070 (8th Cir. 1995) (summary judgment proper to dismiss claims for failure to comply with Rule 9(b)).  The Rule does not require the Court to give a plaintiff an opportunity to replead fraud allegations in order to meet the Rule's specificity requirements.  Courts can, however, exercise their discretion and give a plaintiff such an opportunity.  See Murr Plumbing, Inc., 48 F.3d at 1070.  In this case, Plaintiffs did attempt to replead their claims in response to the Defendants motion

8

for judgment on the pleadings.  The Court nonetheless found that dismissal was appropriate.  Plaintiffs are not entitled, nor is the Court obligated to provide, a third bite at the apple.  Accordingly, the Court finds that its prior dismissal has preclusive effect.

### B.  Permanent Injunction

Injunctions are extraordinary legal remedies and are granted sparingly. Greater Iowa Corp. v. McLendon, 378 F.2d 783, 799 (8th Cir. 1967).  The party seeking a permanent injunction must show actual success on the merits.  Vonage Holdings Corp. v. Minnesota Pub. Utilities Com'n, 290 F. Supp.2d 993, 996 (D. Minn. 2003) (citing Amoco Prod. Co. v. Vill. of Gambell, 480 U.S. 531, 546 n.12 (1987)).  In addition, the Court should consider (1) the threat of irreparable harm to the moving party; (2) the balance between this harm and the injury that granting the injunction will inflict on other interested parties; and (3) the public interest in the issuance of the injunction.  Id. (citing Dataphase Sys., Inc. v. C L Sys., Inc., 640 F.2d 109, 114 (8th Cir.1981) (en banc)).  "The party requesting injunctive relief bears the 'complete burden' of proving all the factors."  Id. (citation omitted).

### 1.    Success on the Merits

This factor has been met, as Defendants have demonstrated that the Court's prior dismissal order is entitled to preclusive effect.

**2.      Threat of Irreparable Harm**

The Court finds that this factor is also met.  "[A] party suffers irreparable harm when it is required to relitigate . . issues previously decided in a federal court."  Canady, 282 F.3d at 1020 (citing In re SDDS, Inc., 97 F.3d 1030, 1040 (8th Cir. 1996)).

**3.      Balance of Harms**

The balance of harms also weighs in favor of the requested injunctive relief.  "The deprivation of an opportunity to pursue the same issues is [another] forum does not constitute a legitimate harm."  Id.

**4.      The Public Interest**

The public interest is also served by the requested relief, as it will promote judicial economy and protection of the parties from harassing and duplicative litigation.  In re SDDS, 97 F.3d at 1041.

**II.      Motion for Sanctions**

Defendants also seek an award of sanctions under 28 U.S.C. § 1927.  This statute authorizes the Court to impose attorney's fees and costs against an attorney who unreasonably and vexatiously multiplies proceedings.  Sanctions are appropriate when attorney conduct, viewed objectively, manifests either intentional or reckless disregard of the attorney's duties to the court.  Lee v. First

<u>Lenders Ins. Servs., Inc.</u>, 236 F.3d 443, 445 (8th Cir. 2001) (counsel sanctioned for filing a class action complaint, and permitting discovery and motion practice to proceed for over one and one-half years before abandoning class action claims without explanation).  Plaintiffs did not respond to this aspect of Defendants' motion.

Clearly, in this case, Plaintiffs' counsel unreasonably multiplied the proceedings by filing a new action in this court, and another in arbitration, asserting the same claims as those dismissed by this Court in this case.  Plaintiffs put forth no legal authority to support their position that this Court's May 31, 2005 Order did not have preclusive effect.  Other courts have found similar conduct sufficient to justify sanctions under section 1927.  <u>See</u> <u>eg.</u>, <u>Willhite v. Collins</u>, 459 F.3d 866 (8th Cir. 2006); <u>Banacquisto v. American Express Financial Corp.</u>, No. 00-1980, 2006 WL 3103163 (D. Minn. Oct. 31, 2006) (counsel sanctioned for bringing action that was barred by class action settlement).  Sanctions are thus appropriate.

IT IS HEREBY ORDERED that Defendants' Motion for Injunction Against Relitigation and for Sanctions [Doc. No. 98] is GRANTED.

1.     Plaintiffs Innovative Medical Systems, Inc., Genesis Medical, Inc., and S.C. Medical, L.L.C., and anyone acting on their behalf or in concert with them, are permanently enjoined from proceeding in the arbitration pending before the

American Arbitration Association, captioned "Innovative Medical Systems, Inc., et al. v. Citigroup Venture Capital Equity Partners, L.P., et al.," No. 65 193 0098 07, or instituting any other proceeding against Defendants or their affiliates, including Citigroup Venture Capital Equity Partners, L.P. and Arizant Healthcare, Inc., arising from their distribution and sales representative agreements with Augustine Medical or the purchase of the "Warm-Up" product, or otherwise interfering with or undermining the final judgment on the merits in the above-captioned case.

2.     **Within 30 days of the date of this Order**, Plaintiffs Innovative Medical Systems, Inc., Genesis Medical, Inc., and S.C. Medical, L.L.C. shall withdraw their arbitration demand pending before the American Arbitration Association, captioned "Innovative Medical Systems, Inc., et al. v. Citigroup Venture Capital Equity Partners, L.P., et al.," No. 65 193 00098 07.

3.     **Within 20 days of the date of this Order**, Defendants shall submit a declaration setting forth the costs and attorney's fees incurred in connection with their response to the arbitration demand in "Innovative Medical Systems, Inc., et al. v. Citigroup Venture Capital Equity Partners, L.P., et al.," No. 65 193 00098 07, and in connection with their motion for a permanent injunction against relitigation and sanctions.  The Court will review that declaration and enter an

Order directing Plaintiffs' counsel to pay by certified check or money order an appropriate amount of attorney's fees, as determined by the Court.

4.  Plaintiffs' Motion to Strike Defendants' Reply Memorandum or in the alternative to file a Sur-reply [Doc. No. 109] is DENIED.


DATED: October 23, 2007          s / Michael J. Davis
                                  Michael J. Davis
                                  United States District Judge